CHARLES O. LOBECK V. STATE OF NEBRASKA, EX REL. NE-
BRASKA BITULITHIC COMPANY, ET AL.

FILED NOVEMBER 2, 1904.    No. 13,950.

1. Cities: CLAIMS. A partial estimate made by the city engineer of
   the city of Omaha on a paving contract, and reported by him to
   the board of public works and the city council for approval and
   allowance, is a claim against the city within the meaning of
   section 33 of the city charter.

2. Appeal. By complying with the provisions of that section, a tax-
   payer may appeal from the order of the city council approving
   and allowing such a claim to the district court.

3. ————: EFFECT. When an appeal is perfected it suspends the order
   of the council and during its pendency the comptroller is not
   required to deliver the warrant for the payment of the estimate
   to the claimant.

4. ————: MANDAMUS. During the pendency of such appeal, manda-
   mus will not lie to compel the delivery of the warrant.

ERROR to the district court for Douglas county:  WIL-
LIAM A. REDICK, JUDGE.  *Reversed with directions.*

*C. C. Wright, W. H. Herdman* and *A. G. Ellick,* for
plaintiff in error.

*W. J. Connell, contra.*

BARNES, J.

The Nebraska Bitulithic Company, in the spring of 1904,
entered into a contract with the city of Omaha to repair
its asphalt pavements.  The company proceeded with the
work, and partially completed the repairs.  By the terms
of the contract, it was provided that payments should be
made on estimates of the city engineer from time to time,
and in such amounts as might be found due by such esti-
mates.  One estimate was made and the amount due there-
under paid, but when the second estimate was reported
by the engineer to the board of public works, and by that
body to the mayor and city council, Charles E. Fanning,

a citizen and taxpayer of the city, notified the council that the work had not been done according to the contract, and that he would appeal from any allowance made on said estimate. The board of public works, the city council and the mayor approved the estimate, and made an allowance of $3,991, the amount due thereunder, and the comptroller and the mayor signed a warrant therefor. Fanning thereupon gave notice and took the necessary steps to perfect an appeal from such approval and allowance to the district court, under the provisions of section 33 of the city charter. The comptroller refused to deliver the warrant to the company and the First National Bank of Omaha, its assignee, until the time for an appeal had expired. Thereupon the plaintiffs commenced this action in mandamus to compel the comptroller to deliver the warrant, notwithstanding the attempted appeal. The trial in the district court resulted in an allowance of a peremptory writ of mandamus, commanding the comptroller to deliver the warrant to the relators. From that judgment he prosecutes error, and thus presents for our consideration the question whether the right of appeal to the district court in such a case is granted by the terms of the city charter. The section in question reads as follows:

"Before any claim against the city, except officers' salaries and interest on the public debt, is allowed, the claimant or his agent or attorney shall verify the same by his affidavit, stating that the several items therein mentioned are just and true and the services charged therein, or articles furnished, as the case may be, were rendered or furnished as therein charged and that the amount therein charged and claimed is due and unpaid, allowing all just credits, and the city comptroller and his deputy shall have authority to administer oaths and affirmations in all matters required by this section. All claims against the city or water board must be filed with the city comptroller. And when the claim of any person against the city is disallowed, in whole or in part, by the city council or water board, such person may appeal from the decision

of the said city council or water board to the district court of the same county by causing a written notice to be served upon the city comptroller of said city, within twenty (20) days after making such decision, and executing a bond to such city, with sufficient surety, to be approved by the city comptroller, conditioned for the faithful prosecution of such appeal, and the payment of all costs that shall be adjuged against the appellant. Upon the disallowance of any claim, it shall be the duty of the city comptroller of said city to notify the claimant, his agent or attorney, in writing, of the fact within five (5) days after such disallowance.   *   *   *   Any taxpayer may likewise appeal from the allowance of any claim against the city or water board by serving a like notice on the city comptroller within twenty days and giving a bond similar to that provided for in this section."

The relators contend that the section above quoted has no application to cases like the one at bar. In other words, that the estimate on which the allowance was made was not a claim within the meaning of said section. We find ourselves unable to assent to this proposition. The law is broad and sweeping in its terms, and was evidently intended to include all claims of every kind and nature requiring for their payment the withdrawal of money from the city treasury, except, of course, officers' salaries, interest on the public debt, and claims for torts, which are presented and prosecuted in a different manner. Its purpose was to safeguard the public funds, and by an easy and inexpensive method enable a taxpayer to prevent fraud and extravagance in conducting the business of the city. It seems clear that it was intended to apply to claims due on contract work, as well as all other demands against the municipality, and should receive such judicial interpretation and construction as will render it effectual for that purpose. We are unable to distinguish any difference between a claim made by a contractor on an estimate of the city engineer for a partial compliance with his contract, and any other contract claim against the city. Sec-

tion 101*a* of the city charter, which defines the powers and duties of the board of public works, among other things, provides:

"It shall be the duty of such board of public works and it shall have power to make contracts on behalf of the city for the performance of all such works and the erection of such improvements as may be ordered by the mayor and council, but only with the approval of the mayor and council. * * * It shall also be the duty of said board to approve the estimates of the city engineer, which may be made from time to time, of the public work, as the same may progress; to accept any work or improvement made when the same shall be fully completed according to contract, subject, however, to the approval of the mayor and council."

With reference to the duties of the city engineer, it is provided in section 93 of the charter, as follows:

"He shall make all necessary surveys, plans, specifications and estimates, of all public works of the city and their maintenance and repairs. The city engineer shall make all temporary and final estimates of public works under contract, and report the same to the board of public works, who shall submit the same to the mayor and council with their recommendation."

Under the provisions of section 94 of the charter, it is also made the duty of the city engineer to inspect public work, and, if found to be properly done, to accept the same and forthwith report his acceptance to the board of public works, and, when the contract so provides, he may accept such work in sections. But in every case he must report his acceptance to the board of public works, which, in turn, reports the same to the mayor and city council for final approval and acceptance. So it is clear that no payment can be made for any public work until the claim therefor has been allowed by the city council, and approved by the mayor, and the amount thus found thereby due is ordered paid. The amount due on an estimate is as much a claim as an amount due on a contract without an esti-

mate. In *State v. District Court,* 90 Minn. 457, 97 N. W.
132, a case very much like the one at bar, and where the
same contention that the amount of an estimate was not
a claim was made, the court said:

"It is urged that relator has presented no claim to the
city council for their action, that it never submitted to
the jurisdiction of that body, and is now being forced into
court without its consent. It appears from the record
that, after the relator had partly performed its contract,
some officer representing it requested the proper city au-
thorities to make an estimate of the amount of work per-
formed. The request was complied with and estimate
made, which was thereafter presented to the council for
their action. It was allowed by the council, and relator
demanded of the city clerk the issuance of an order on the
city treasurer for the amount. That relator occupied the
position of a claimant with a claim against the city, there
can be no serious doubt. It asserted a claim under the con-
tract for the amount claimed to be due, and the city council
duly allowed it. If anything further is essential to con-
stitute a claim within the meaning of the charter, we are
unable to point it out."

It is contended, however, that, because the relator did
not verify the estimate in question by affidavit, stating
"that the items therein alleged are just and true, and the
services charged therein, or articles furnished, as the case
may be, were rendered or furnished as therein charged,
and that the amount therein charged and claimed is due
and unpaid, allowing all just debts and credits," the claim
was not included within the provisions of section 33, above
quoted. We do not so understand it. The allowance of
the estimate by the city council, and the approval of the
mayor, was required before a warrant could be drawn
for its payment, and it is our opinion that such estimate,
when presented, should have been accompanied by the
verification of the relator, as set forth above. The mere
fact that it had been the custom to disregard this charter
provision when such estimates were presented does not

change the nature of the indebtedness, or render it any less a claim against the city within the meaning of the law. The council, by acting on the estimate without requiring the affidavit above mentioned, could not deprive a taxpayer of his right of appeal. It is urged that it would be a calamity to the city of Omaha to hold that an appeal could be taken from the allowance of a partial estimate under a contract for paving; that it would make rival contractors, in the place of the city engineer and the board of public works, the arbitrators of the proper execution and completion of public work done under contract with the city. We think that counsel is unnecessarily alarmed about this matter. The provisions of the city charter require certain formalities to be observed by those having claims against the city, precedent to the issuance of a warrant in payment of the same. Persons entering into contracts with the city are bound to know this fact, and take it into consideration. The charter provisions become a part of such contracts, and the remedy there pointed out to secure payment must be pursued. The fact that a strict compliance with the law would work a hardship in some cases does not authorize the courts to nullify the provisions of the charter; we must declare the law as we find it. If to comply with the provisions of the charter is difficult or onerous, or results in injury to the city and individuals, the remedy is with the legislature, and not with the courts. Relief should be sought by amendment, and not in nullification.

It is therefore our opinion that the estimate in question was a claim within the meaning of section 33 of the city charter, and that the taxpayer had a right to appeal from the approval and allowance thereof by the city council to the district court. It appears that an appeal was duly perfected. The effect of the appeal was to at least suspend the order of the board during its pendency, and while the case was pending and undisposed of in the district court mandamus would not lie to compel the delivery of the warrant.

For these reasons, the judgment of the district court is reversed and the cause remanded, with directions to dismiss the action.

REVERSED.